UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————

BANCO INDUSTRIAL DE VENEZUELA, C.A.,

                        Plaintiff,              11 Civ. 2082 (JGK)

          - against -                          OPINION AND ORDER

CDW DIRECT, L.L.C.,

                        Defendant.
————————————————————————————

JOHN G. KOELTL, District Judge:

     The plaintiff, Banco Industrial de Venezuela ("BIV"),
brings this action for negligence, aiding and abetting a breach
of fiduciary duty, and unjust enrichment against CDW Direct
("CDW").  The action arises out of the sales of merchandise by
the defendant to a faithless employee who purported to be acting
on behalf of the plaintiff.  The plaintiff now seeks to recover
the cost of the merchandise that it claims it never received.
The defendant moves to dismiss the Amended Complaint pursuant to
Federal Rule of Civil Procedure 12(b)(6).  The Court has subject
matter jurisdiction in this case pursuant to 28 U.S.C. § 1332.


                              I.

     In deciding a motion to dismiss pursuant to Rule 12(b)(6),
the allegations in the complaint are accepted as true, and all
reasonable inferences must be drawn in the plaintiff's favor.
McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir.

2007).  The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).  The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id.

     When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiffs relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2000); see also Roseville Emps.' Ret. Sys. v. Energysolutions, Inc., No. 09 Civ. 8633, 2011 WL 4527328, at *1-2 (S.D.N.Y. Sept. 30, 2011).

II.

The following allegations are assumed to be true for the purposes of this motion.

BIV is a Venezuelan bank that performs limited operations in the United States for which it employs a total of thirty-five individuals in New York and Miami.  (Am. Compl. ¶ 6.)  CDW was BIV's principal computer and information technology vendor in the United States between January 2007 and the commencement of this action.  (Am. Compl. ¶¶ 4, 12.)

In the transactions at issue, an employee of BIV purchased goods from CDW for personal use and charged them to BIV.  (Am. Compl. ¶¶ 1, 3, 15-17.)  The now-former employee, Anthony Gomez, was BIV's Security Administrator between April 2006 and October 2010.  (Am. Compl. ¶¶ 14, 44.)  As a "senior employee," Gomez's responsibilities included purchasing technology equipment from vendors like CDW on behalf of BIV.  (Am. Compl. ¶¶ 14, 44.) Between January 2007 and September 2010 Gomez purchased at least $312,505 worth of equipment from CDW, for which BIV has paid CDW $206,005.  (Am. Compl. ¶¶ 16, 37.)  Specifically, Gomez ordered "four flat-screen televisions, two videogame systems, nine iPods, an iPad, two GPS devices, . . . twelve digital cameras[,]" and "96 pieces of Cisco networking equipment  . . . including 16 Cisco catalyst switches, which contain enough ports to support a large office with hundreds of employees."  (Am.

3

Compl. ¶¶ 4, 30-31.)  Gomez placed the orders through an account manager that CDW employed and assigned to BIV's account.  (Am. Compl. ¶¶ 13, 18.)  The account manager, Taralee Mascarella-Santiago, entered the orders based on the information provided by Gomez.  (Am. Compl. ¶ 18.)  To conceal these purchases from BIV, Gomez altered invoices, created false memoranda that substantiated the purchases, and instructed CDW to deliver the equipment to locations unaffiliated with BIV.  (Am. Compl. ¶ 15.)

Based on the allegations in the Amended Complaint, BIV contends that CDW knew, should have known, or consciously avoided learning of Gomez's wrongdoing, which should have been obvious to CDW based on the nature of the equipment, the delivery addresses, and CDW's familiarity with the nature and size of BIV's business.  (Am. Compl. ¶¶ 3, 4, 28-32, 40, 45-46.) BIV pleads three causes of action.  First, BIV argues that, given CDW's knowledge or unconfirmed suspicion, CDW is liable for negligence because it breached its duty to monitor the account and to warn BIV's management of Gomez's suspicious activity.  (Am. Compl. ¶ 40.)  These duties arose, according to the Amended Complaint, as a result of CDW's efforts undertaken to aid BIV with its purchases.  (Am. Compl. ¶ 39.)  The Amended Complaint alleges that CDW's efforts consisted of representations on CDW's website that its account managers are

available to advise customers with purchasing decisions coupled with CDW's assignment of an account manager to process BIV's orders.  (Am. Compl. ¶ 39; <u>see also</u> Am. Compl. ¶¶ 12, 18-19, Ex. B.)[1]  Second, BIV claims that, given its knowledge or suspicion of the fraudulent nature of the transactions, CDW's continued execution of Gomez's orders without independent verification constituted aiding and abetting Gomez's breach of fiduciary duty.  (Am. Compl. ¶¶ 46-47.)  Finally, the Amended Complaint alleges that, given CDW's knowledge or suspicion of the fraudulent nature of the transactions, CDW has been unjustly enriched because it has retained payment for the fraudulent purchases despite failing to "perform its fundamental responsibility to provide technology purchasing advice . . . ."  (Am. Compl. ¶ 53.)

---

[1] <u>See</u> Am. Compl. Ex. A (CDW is "[a] partner that will earn your trust by delivering both the competence and the confidence you need to get the job done.  That's where CDW comes in – with value."); Am. Compl. Ex. B ("Before making difficult decisions, get unbiased, vendor-neutral advice from our certified technical specialists. . . . Keeps you from settling on technology that isn't exactly what you need.").

### III.

The defendant moves to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

### A.

BIV claims that CDW is liable for BIV's losses under a negligence theory.  CDW argues that it owed no duty to BIV beyond that provided by the contracts between the parties: namely, the duty to fulfill orders to purchase goods placed by the plaintiff.  BIV has failed to allege sufficient facts to sustain a claim for negligence against CDW.

The elements of a negligence claim under New York law are: "(1) a duty owed to the plaintiff by the defendant; (2) breach of that duty; and (3) injury substantially caused by that breach."  Lombard v. Booz-Allen & Hamilton, Inc., 280 F.3d 209, 215 (2d Cir. 2002) (citing Merino v. N.Y.C. Transit Auth., 639 N.Y.S.2d 784, 787 (App. Div. 1996)).  Where the only duty owed to the plaintiff arises from a valid contract, a negligence claim does not lie.  See, e.g., Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 516 N.E.2d 190, 193 (N.Y. 1987) ("It is a well established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated."); Manes Org., Inc. v. Meadowbrook Richman, Inc., 770 N.Y.S.2d 27, 28 (App. Div. 2003).

Despite BIV's insistence that CDW owed a duty to monitor Gomez's purchases and warn BIV's management of suspicious activity, the Amended Complaint fails to indicate any source for this duty. BIV and CDW were in a contractual buyer-seller relationship and nothing more.

BIV's additional arguments that CDW had a legal duty are meritless.  "[A]n arms-length commercial transaction, without more, cannot give rise to a duty of care [unless] a special relationship exists between the parties by virtue of the defendant's 'unique or specialized expertise,' or the defendant's 'special position of confidence and trust with the injured party.'"  M & T Bank Corp. v. LaSalle Bank Nat'l Ass'n, No. 08 Civ. 581S, 2012 WL 432890, at *11 (W.D.N.Y. Feb. 5, 2012) (citing Kimmell v. Schaefer, 675 N.E.2d 450 (1996)).  BIV and CDW were not engaged in a broker-client advisory relationship, see, e.g., DeBlasio v. Merrill Lynch & Co., Inc., No. 07 Civ. 318, 2009 WL 2242605, at *29 (S.D.N.Y. July 27, 2009), nor was CDW an expert advisor to BIV, cf. Fresh Direct, LLC v. Blue Martini Software, Inc., 776 N.Y.S.2d 301, 302-03 (App. Div. 2004).  Indeed, the Amended Complaint fails to allege that BIV used CDW for anything other than executing orders to purchase goods – a classic arm's-length commercial transaction.  While some cases have imposed duties upon parties contracting at arm's length, see, e.g., Muller-Paisner v. TIAA, 289 F. App'x 461,

465-66 (2d Cir. 2008) (summary order), those cases, on which BIV relies, involve unsophisticated parties, the elderly, or the infirm.  They are inapposite to this case involving two sophisticated business entities.

BIV also argues that CDW's website representation, that CDW is "[a] partner that will earn your trust by delivering both the competence and the confidence you need to get the job done," created a heightened duty of care towards BIV.  Vague, optimistic, forward-looking statements are not actionable because no reasonable person would rely upon them.  DeBlasio, 2009 WL 2242605, at *23, *35 (finding "promises of a 'Special Relationship with Clients'" in promotional documents and advertisements to be "immaterial puffery" legally insufficient to create a heightened duty of care); EED Holdings v. Palmer Johnson Acquisition Corp., 387 F. Supp. 2d 265, 276 (S.D.N.Y. 2004) ("It is well established in New York that a seller's mere general commendations of the product sought to be sold, commonly known as 'dealer's talk,' 'sales talk,' or 'puffery,' do not amount to actionable misrepresentations[.]" (internal citation omitted)).  CDW's statement is not a specific representation of a duty of care and supervision, but mere puffery.  It does not give rise to a heightened duty of care.  CDW's only duty, which it fulfilled, was the duty to perform its contracts with BIV.

BIV argues, relying on Muller-Paisner, that notwithstanding

the general rule, because CDW represented in its marketing materials that "trust is a crucial element of the relationship between the defendant and [its] customers," that representation created a heightened duty towards BIV. (Pl.'s Mem. Opp. Mot. Dismiss Am. Compl., 16-17, 17 n.11 (quoting Muller-Paisner, 289 F. App'x at 466).)  The plaintiff reads Muller-Paisner too broadly.  Muller-Paisner dealt with an insurer who allegedly made representations to an infirm purchaser of an annuity insurance contract.  Muller-Paisner, 289 F. App'x at 462.  The defendant insurance company made representations that, "they will assist customers in purchasing the best option available to them in order to maximize their income for the balance of their post-retirement lives."  See id.  The fatally ill decedent died six months after using the bulk of her life savings to purchase the annuity from the defendant insurance company, leaving almost nothing to be disposed of in accordance with her will.  See id.  Muller-Paisner is inapplicable to the arm's-length commercial transaction and the puffery that CDW is a "partner that will earn your trust."  BIV is not like the infirm decedent in Muller-Paisner who was preyed upon by the defendant in that case; nor are the alleged representations in this case similar to the specific misrepresentations in Muller-Paisner.

The defendant's motion to dismiss the plaintiff's negligence claim is therefore **granted**.

**B.**

BIV's second claim alleges that CDW aided and abetted Gomez's breach of fiduciary duty to BIV.  The defendant argues that the plaintiff's allegations are conclusory and fail to allege facts that demonstrate that CDW knew of or substantially assisted Gomez's wrongful conduct.  Because the facts alleged do not rise to the level of conscious avoidance, and because there are no plausible allegations of substantial assistance by CDW, the claim is dismissed.

Claims of aiding and abetting a breach of fiduciary duty that sound in fraud must meet the heightened pleading standard under Federal Rule of Civil Procedure 9(b).  See, e.g., Marino v. Grupo Mundial Tenedora, S.A., 810 F. Supp. 2d 601, 606 (S.D.N.Y. 2011); DeBlasio, 2009 WL 2242605, at *10, *14.  To establish a claim for aiding and abetting a breach of fiduciary duty the plaintiff must adequately plead: "(1) the existence of a violation by the primary wrongdoer; (2) knowledge of the violation by the aider and abettor; and (3) proof that the aider and abettor substantially assisted the primary wrongdoer."  In re Refco Sec. Litig., 759 F. Supp. 2d 301, 333 (S.D.N.Y. 2010) (internal quotation marks and citation omitted); see Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC, 479 F. Supp. 2d 349, 367 (S.D.N.Y. 2007) ("As in the context of pleading a primary violation, pleading knowledge for purposes of an aiding and

abetting claim [sounding in fraud] requires allegations of facts
that give rise to a 'strong inference' of actual knowledge.")
(citations omitted).  BIV's Amended Complaint falls short of
stating a claim on both the knowledge and substantial assistance
prongs.

**1.**

BIV has not pleaded sufficient facts to support its claim
that CDW had knowledge that Gomez's wrongful conduct was
occurring.  Either actual knowledge or "conscious avoidance may
satisfy the knowledge prong of an aiding and abetting charge."
Refco, 759 F. Supp. 2d at 334 (quoting Fraternity Fund, 479 F.
Supp. 2d at 368).  "The burden of demonstrating actual
knowledge, although not insurmountable, is nevertheless a heavy
one."  Fraternity Fund, 479 F. Supp. 2d at 367 (citation
omitted).  Conscious avoidance "occurs when 'it can almost be
said that the defendant knew' because he or she suspected a fact
and realized its probability, but refrained from confirming it
in order later to be able to deny knowledge."  Refco, 759 F.
Supp. 2d at 334 (quoting Fraternity Fund, 479 F. Supp. 2d at 368
(citations omitted)).  In contrast to conscious avoidance,
constructive knowledge – that the defendant "should have known"
– is insufficient to establish a claim of aiding and abetting a
breach of fiduciary duty.  See id. (citing Fraternity Fund, 479

11

F. Supp. at 368); Kaufman v. Cohen, 760 N.Y.S.2d 157, 170 (App. Div. 2003).  "Conscious avoidance therefore involves a culpable state of mind whereas constructive knowledge imputes a state of mind on a theory of negligence."  Fraternity Fund, 479 F. Supp. 2d at 368.  A plaintiff may "not merely rely on conclusory and sparse allegations that the aider or abettor knew or should have known about the primary breach of fiduciary duty."  Meisel v. Grunberg, 651 F. Supp. 2d 98, 115 (S.D.N.Y. 2009) (quoting Global Minerals & Metals Corp. v. Holme, 824 N.Y.S.2d 210, 217 (App. Div. 2006)).

Conclusory allegations are insufficient to survive a motion to dismiss.  See Iqbal, 556 U.S. at 676.  The Amended Complaint alleges a number of conclusory allegations, among them: that Mascarella-Santiago either had, or consciously avoided obtaining, knowledge that Gomez's purchases were not what BIV needed but instead were red flags indicating unauthorized and fraudulent activity  (Am. Compl. ¶¶ 4, 44-47);  that Mascarella-Santiago "willfully ignor[ed]" the fact that BIV did not have any business need for the high-end networking or recreational equipment Gomez ordered to be delivered to non-BIV addresses (Am. Compl. ¶ 39; Pl.'s Mem. Opp. Mot. Dismiss Am. Compl., 4, 15); that Mascarella-Santiago "must have known (or at least suspected)" Gomez's fraud (Am. Compl. ¶ 3); that many of the orders Gomez placed were "facially suspicious" (Am. Compl. ¶

12

27).  All of these statements are conclusory allegations that
are insufficient to survive a motion to dismiss.  See Iqbal, 556
U.S. at 676.

"While legal conclusions can provide the framework of a
complaint, they must be supported by factual allegations."  Id.
at 679.  Putting aside the conclusory statements in the Amended
Complaint, the remaining factual allegations do not state a
plausible claim for actual knowledge or conscious avoidance.
BIV alleges that CDW advertises that its account managers
understand their customers' business needs and provide advice
that prevents unnecessary purchases; (Am. Compl. ¶¶ 4, 12); that
Mascarella-Santiago was familiar with BIV's purchasing needs;
(Am. Compl. ¶ 39); and that Mascarella-Santiago took orders from
Gomez, a senior manager at BIV, billed BIV for the products, and
shipped the products to addresses that Gomez requested.  (Am.
Compl. ¶ 18-20.)  While most shipments were sent to BIV
addresses, beginning in 2009, Gomez began ordering a far larger
number of products, including recreational products, to non-BIV
addresses.  (Am. Compl. ¶¶ 23-24.)  These addresses, which
included other businesses, also included at least one special
instruction to "PLEASE LEAVE AT SIDE DOOR."  (Am. Compl. ¶ 29.)
BIV paid for all of Gomez's purchases until September 16, 2010,
when it discovered that they were fraudulent.  (Am. Compl. ¶¶
35-36.)

13

None of the facts alleged give rise to a strong inference that Mascarella-Santiago or CDW knew or consciously avoided knowledge of Gomez's fraudulent scheme.  See, e.g., Rosner v. Bank of China, 528 F. Supp. 2d 419, 427 (S.D.N.Y. 2007) (bank teller's failure to recognize that bank accounts had suspicious transfers at most amounted to constructive knowledge of an alleged fraud being perpetrated by a customer of the bank). Taking these allegations as true, at most they indicate that CDW was reckless and should have known that there were suspicious transactions at BIV.  They do not rise to the level of conscious avoidance.

The plaintiff's reliance on Anwar v. Fairfield Greenwich Ltd., 728 F. Supp. 2d 372, 442-43 (S.D.N.Y. 2010), is unavailing.  In Anwar, the plaintiffs had invested in four funds that funneled their investments into the Madoff ponzi scheme. The plaintiffs sued those funds and other defendants alleging, among other claims, aiding and abetting breach of fiduciary duty.  See id. at 387-88.  The court denied a motion to dismiss a claim for aiding and abetting breach of fiduciary duty that was asserted against various defendants (the "Citco Defendants") who provided services to the funds in which the plaintiffs invested.  The court explained:

> ...Plaintiffs allege that the Citco Defendants were aware of the roles consolidated in Madoff, the lack of transparency into his operations, his family members'

14

> involvement in key positions at his firm, his lack of
> segregation of important functions, his use of an
> unknown auditing firm, his use of paper trading
> records, and his implausibly consistent investment
> returns. Given the Citco Defendants' familiarity with
> the Funds, as well as their general experience in
> providing financial services to funds, and their
> knowledge of these red flags, the Court finds that
> Plaintiffs allege a strong inference [of conscious
> avoidance].

Id. at 443.  The depth of the factual allegations in Anwar, the

defendants' knowledge of the workings of the Madoff fund and of

the finance industry, as well as the strong circumstantial

evidence are not comparable to the sparse factual pleadings made

by the plaintiff in this case.


## 2.

Moreover, BIV has also failed to state a claim for aiding

and abetting a breach of fiduciary duty because it has not

alleged sufficient facts to support its claim that CDW

substantially assisted Gomez's breach of fiduciary duty.

"Substantial assistance occurs when a defendant affirmatively

assists, helps conceal or fails to act when required to do so,

thereby enabling the [primary wrong] to occur."  Refco, 759 F.

Supp. 2d at 336 (alteration in original) (quoting Fraternity

Fund, 479 F. Supp. 2d at 370 (citations omitted)).  Inaction of

an alleged aider and abettor does not constitute substantial

assistance unless the defendant owes a fiduciary duty directly

to the plaintiff, see Kaufman, 760 N.Y.S.2d at 170, and the mere fact that participants in the breach of fiduciary duty used the defendant's regular business operation does not rise to the level of substantial assistance.  See Rosner, 528 F. Supp. 2d at 427.

BIV's Amended Complaint alleges that CDW assisted by "willfully ignoring the suspicious nature of Gomez's orders." (Am. Compl. ¶ 46.)  BIV argues that CDW should have taken steps to contact other senior management at BIV because of the suspicious nature of the orders.  At bottom, BIV is alleging that CDW failed to act.  However, BIV has failed to allege or show that CDW owed a fiduciary duty to BIV.  Absent a fiduciary duty inaction by CDW does not constitute aiding and abetting. See Kaufman, 760 N.Y.S.2d at 170.

BIV also states that CDW "knowingly shipped this equipment to addresses it knew were not affiliated with BIV...."  (Am. Compl. ¶ 46.)  BIV offers no allegations that CDW was doing anything other than offering its normal services as a commercial vendor of electronic equipment.  See Rosner, 528 F. Supp. 2d at 427.  The mere fact that Gomez used CDW to perpetrate his breach of fiduciary duty does not rise to the level of substantial assistance on the part of CDW.  See id.  In Rosner, Bank of China provided its usual banking services to a business customer who used the bank to perpetrate a fraudulent scheme.  The

financial transactions, which were not "atypical" or "non-routine" did not "rise to the level of substantial assistance" on the part of Bank of China.  <u>See</u> <u>id.</u>  Similarly, here, BIV alleges that CDW shipped products to BIV at the request of Mr. Gomez, a senior manager at BIV.  These allegations are insufficient to constitute substantial assistance.

Because BIV's pleadings fail to give rise to a strong inference of both knowledge and substantial assistance, BIV has not stated a claim for aiding and abetting a breach of fiduciary duty.  The defendant's motion to dismiss the plaintiff's aiding and abetting claim is therefore **granted**.[2]

---

[2] Although the defendants did not move to dismiss under Rule 9(b), both parties agree that the "strong inference" standard is the correct standard for evaluating the scienter requirement of an aiding and abetting claim. (<u>See</u> Pl.'s Mem. Opp. Mot. Dismiss Am. Compl., 13; Def.'s Mem. Supp. Mot. Dismiss Am. Compl., 12).  In any event, the allegations contained in the Amended Complaint fail to state a claim under Rule 12(b)(6).

### C.

BIV also seeks to recover on a theory of unjust enrichment. The defendant argues that the Amended Complaint fails to state a claim for unjust enrichment because of the existence of a contract between the parties and because the plaintiff received value in the exchange.

"The essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." Paramount Film Distrib. Corp. v. New York, 285 N.E.2d 695, 698 (N.Y. 1972); see also Republic of Benin v. Mezei, No. 06 Civ. 870, 2011 WL 4373921, at *7 (S.D.N.Y. Sept. 20, 2011).  To establish a claim of unjust enrichment under New York law, a plaintiff must allege (1) that the defendant benefited (2) at the plaintiff's expense, and (3) that equity and good conscience require restitution.  Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000).

The Amended Complaint fails to demonstrate that equity and good conscience require that CDW make restitution.  "Equity will not entertain an action to declare the rescission of an executed transaction unless a decree announcing the rescission is essential to the suitor's protection." Shank v. Schuchman, 106 N.E. 127, 128 (N.Y. 1914) (Cardozo, J.); see also Paramount Film Distrib. Corp., 285 N.E.2d at 698 ("[An unjust enrichment] claim

is undoubtedly equitable and depends upon broad considerations of equity and justice."). Absent evidence that a seller knew of an unfaithful employee's misconduct or conspired with him, the equities do not favor reimbursing an employer for the unauthorized purchases of a rogue employee, especially "given [the employer's] complete lack of oversight of its employee and failure to take even minimal steps to monitor its expenses." JPMorgan Chase Bank v. Orleans, 857 N.Y.S.2d 523, 524 (App. Div. 2008). In this case, the equities do not favor BIV.

The Amended Complaint fails to demonstrate that CDW knew of Gomez's misconduct or conspired with him to defraud BIV. Furthermore, given BIV's complete failure to take any steps to monitor the egregious expenditures by Gomez, its own employee, the equities do not favor forcing CDW, who has already sold and shipped the goods, to disgorge the money it received for the goods it distributed under the mistaken belief that Gomez was acting within his authority. See id.

Furthermore, "[u]njust enrichment is a quasi-contract claim, and the existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi-contract for events arising out of the same subject matter." Payday Advance Plus, Inc. v. Findwhat.com, Inc., 478 F. Supp. 2d 496, 504 (S.D.N.Y. 2007) (internal quotation marks and alterations omitted); see also

19

Clark-Fitzpatrick, 516 N.E.2d at 193.  BIV argues that it is not bound by the contracts between Gomez and CDW because Gomez lacked "authority to purchase equipment that was not for [the plaintiff's] use."  (Pl.'s Mem. Opp. Mot. Dismiss Am. Compl., 9 n.3.)  The plaintiff pleaded that Gomez was a "senior employee," (Am. Compl. ¶ 44), whose "duties included interfacing with [BIV's] information technology vendors and purchasing certain computer and technology equipment for [BIV's] use" (Am. Compl. ¶ 14).  The Amended Complaint also states that, although Gomez's purchases began in or around January 2007, (Am. Compl. ¶ 15), the plaintiff continued to pay for these purchases until September 16, 2010, when it discovered that they were fraudulent.  (Am. Compl. ¶¶ 35-36.)

The plaintiff does not allege that Gomez lacked authority to purchase computer and information technology equipment on its behalf, but that Gomez lacked authority to purchase equipment for his personal use.  (Pl.'s Mem. Opp. Mot. Dismiss Am. Compl., 9 n.3.)  Indeed, the Amended Complaint plainly states that BIV authorized Gomez to purchase computer and information technology equipment on its behalf.  (Am. Compl. ¶ 14.)  Because Gomez had apparent authority to enter into the transactions with CDW, the transactions resulted in contracts that were fully executed. See, e.g., Kirschner v. KPMG LLP, 938 N.E.2d 941, 964 n.3 (N.Y. 2010) ("agency law generally holds a principal responsible for

the actions of an agent that are taken with actual or apparent authority" (citing Standard Funding Corp. v. Lewitt, 678 N.E.2d 874 (N.Y. 1997); Hallock v. State of New York, 474 N.E.2d 1178 (N.Y. 1984))).  As such, the existence of these contracts precludes an action in quasi-contract for unjust enrichment.

The cases on which BIV relies, in which the defendants both retained the plaintiffs' payments and failed to provide goods or services, do not support its claim for unjust enrichment.  See, e.g., Univ. Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co., 196 F. Supp. 2d 378, 388-89 (S.D.N.Y. 2002); Zahn v. Gulf Oil Corp., 125 N.Y.S.2d 55, 56-68 (Sup. Ct. 1953). In this case, CDW shipped products at the request of a BIV employee and received payments for those shipments.  CDW did not keep both the money and the goods, which is the critical distinction between instances in which equity and good conscience may require restitution, and this case, in which restitution is inequitable to CDW.

The defendant's motion to dismiss the plaintiff's unjust enrichment claim is therefore **granted**.

### CONCLUSION

For the reasons discussed above, the defendant's motion to dismiss the plaintiff's Amended Complaint is **granted and the Amended Complaint is dismissed with prejudice.** After an initial motion to dismiss had been filed, the plaintiff was afforded an opportunity to amend its Complaint and was instructed that any dismissal of the Amended Complaint would be with prejudice. (Order, Jan. 30, 2012.)  See Abu Dhabi Commercial Bank v. Morgan Stanley & Co., No. 08 Civ. 7508, 2009 WL 3346674, at *2 & n.14 (S.D.N.Y. Oct. 15, 2009) (dismissal appropriate after the plaintiff has an opportunity to amend and the amended complaint fails to correct deficiencies) (collecting cases).  The Court has considered all of the arguments of the parties.  To the extent not specifically discussed, any remaining arguments are either moot or without merit.

**The Clerk of Court is directed to enter judgment dismissing the Amended Complaint and closing this case.**

SO ORDERED.

Dated:    New York, New York
          August 31, 2012

                                    John G. Koeltl
                                United States District Judge